FIRST NATIONAL BANK OF GREENVILLE V. GREENVILLE OIL AND COTTON COMPANY.

Decided January 18, 1901.

**1. Contract—Ultra Vires—National Bank—Estoppel.**

Where a contract between a corporation, such as a national bank, and another party has been fully performed, and the corporation has received a benefit from such performance, it is held estopped to plead that the contract is ultra vires as being in excess of its charter powers.

**2. Same—Authority of Cashier to Contract.**

Where one deals with the cashier of a bank in good faith and without any notice of want of authority on his part, and the act done is within the apparent scope of his authority, the party so dealing may enforce the contract against the bank.

**3. Same—Statute of Frauds—Verbal Agreement—Debt of Another.**

Where plaintiff's petition relied upon a verbal agreement of the defendant to pay plaintiff for feedstuffs to be thereafter furnished to another person, and sought recovery for a balance due upon the feedstuffs so furnished, it was not subject to demurrer on the ground that the contract was within the statute of frauds.

**4. Evidence—Immaterial Error.**

The exclusion of evidence of conversations that were but inducements leading up to the making of the contract sued on, and which could not have affected the result of the suit, is not ground for reversal where the case was tried by the court without a jury and there is sufficient competent evidence in the record to sustain the judgment.

Appeal from Hunt. Tried below before Hon. Howard Templeton.

*Craddock & Looney,* for appellant.

*Perkins, Gilbert & Perkins,* for appellee.

BOOKHOUT, Associate Justice.—This is a suit instituted by appellee, as plaintiff, in the District Court of Hunt County against the First National Bank of Greenville, a banking corporation organized under the national banking act, to recover the sum of $604.58, with legal interest thereon. The pleadings are sufficiently set out in the opinion, and hence are here omitted. There was a trial before the court, without a jury, which resulted in a judgment for plaintiff against the bank for the sum of $415, with interest thereon. Defendant has prosecuted an appeal to this court.

Appellant's first assignment of error complains of the action of the trial court in overruling its general demurrer to the petition. Under this assignment the appellant contends: "That the defendant, a national banking corporation, did not possess the power to guarantee or become surety for the payment of feed bills created by Ingram with plaintiff, and such an agreement as alleged by plaintiff is ultra vires, void, and not capable of being ratified; and as the feedstuffs were not furnished to or received by defendant, but were furnished to and received by Ingram, the owner of the cattle, the defendant was not liable as on a quantum meruit.

The petition, in substance, alleges that plaintiff was engaged in the manufacture and sale, at Greenville, Texas, of cotton seed meal and hulls, and that one J. R. Ingram, either alone or in connection with his son, was engaged in the feeding of a herd of cattle at Greenville; that Ingram desired to purchase from plaintiff on credit, cotton seed meal and hulls for the fattening of said cattle. Plaintiff refused to sell him on credit. Thereupon Ingram made some character of arrangement with the First National Bank of Greenville by which said bank was to pay plaintiff for such feed; and thereafter the bank verbally informed plaintiff that if it would furnish Ingram such amount of cotton seed meal and hulls as might be necessary to prepare his cattle for market at the prices agreed upon between the plaintiff and Ingram, the defendant bank would pay the plaintiff for the feed so furnished and delivered; that this offer was accepted by plaintiff, and in pursuance thereof plaintiff delivered to Ingram during the months of November and December, 1898, cotton seed meal and hulls to the amount of $1137.34, of which amount defendant paid plaintiff $532.76, and re-

fused to pay the balance. The petition further shows that under the arrangement made between Ingram and the bank, Ingram was to open an account with the bank and to remove his deposit from the Greenville National Bank to the defendant bank, and also pay interest to the bank on the money advanced by the bank to pay feed bills for Ingram, and that he was to execute a mortgage on his cattle to the bank to secure it in the moneys advanced by it, and when the cattle were sold the bank was to be reimbursed out of the proceeds of the cattle for all advances made; that in pursuance of said arrangement Ingram and his son did execute a mortgage to said bank on said cattle and certain real estate. The petition alleges that the feed furnished by plaintiff was used in the fattening of said cattle, and that by means thereof their value increased $3000, and that without such feed the cattle could not have been placed on the market. It was alleged that Ingram had sold the cattle and paid the proceeds thereof to defendant bank, which the bank applied in extinguishment of a debt due by Ingram to it for moneys advanced for other purposes. By supplemental petition it was further alleged by plaintiff that it acted in the utmost good faith in accepting the proposition to it for said feed by defendant's officers, the same being officers in actual charge and control of said business and acting within the scope of their authority; that it believed the officers of the defendant acted in good faith, and that they had authority to make the contract or agreement; that defendant knew all along while the feed was being furnished that plaintiff was relying upon defendant's promise to pay, and it knew that Ingram was feeding the feedstuffs to his cattle, and knew that he was unable to procure the feed from plaintiff without defendant's aid, and never informed or intimated to plaintiff that it had no intention of paying for said feed until long after the cattle were sold and it had received the proceeds. Plaintiff claimed that defendant is now estopped from denying its liability.

It is not contended by the appellant that the bank was prohibited by the law from making the contract. The contention is, that the contract, as alleged, is in excess of its charter powers, and therefore ultra vires. Contracts of a corporation are said to be ultra vires when they involve some adventure or undertaking not within the scope of their charter. Its act when ultra vires may be taken advantage of by the State, a stockholder, the corporation, or the person contracting with the corporation. When the corporation, or the party contracted with, seeks to defeat the contract because it is ultra vires, the courts are reluctant to grant relief, it being an attempt to evade a contract which both parties have violated. 2 Cook on Corp., sec. 681.

The case of American National Bank v. National Wall Paper Company, 77 Federal Reporter, 85, was a case where the cashier of the bank guaranteed the debt of the Gauthier Decorating Company, to the wall paper company. The bank owned the stock of the decorating company and thereby received a benefit by the sale made to that company by the paper company. The decorating company failed, and in a suit

by the wall paper company against the bank to recover on the promise made by the cashier the bank sought to escape liability, first, on the ground that the cashier acted without the authority of the bank, and second, that the bank had no authority under its charter to buy and sell goods, and that any purchase of the goods by the bank or anyone for it was ultra vires. The court held that the bank, having received and appropriated the proceeds of the goods purchased, was estopped to set up in a suit for the price the want of power to make the purchase. See also Merchants Bank v. State Bank, 10 Wall., 104; People's Bank v. National Bank, 101 U. S., 181.

Judge Thompson, in his Commentaries on Corporations, in discussing under what circumstances a corporation which has exceeded its charter power in making a contract may be held liable thereon, states the law thus: "The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers and has received the fruits and benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it." 5 Thomp. on Corp., sec. 6016, and note 3; also sec. 6025.

Where a contract between a corporation and another party has been fully performed by such party, and the corporation has received a benefit from such performance, it will not be permitted, as a ground for defeating its enforcement against it, to plead that the contract was executed in excess of its charter powers. Railway v. Gentry, 69 Texas, 625; Bond v. Terrell Mfg. Co., 82 Texas, 309; Logan v. Association, 8 Texas Civ. App., 490.

In the case at bar the petition shows that the bank was to get interest at the rate of 10 per cent per annum on the money advanced Ingram. It also secured his business. He had a deposit in another bank which was transferred to defendant bank. The bank also secured a mortgage lien on the cattle, and when the cattle were sold the proceeds were paid to the bank. The bank had notice that the plaintiff would not sell Ingram on credit. It promised plaintiff that if plaintiff would sell and deliver to Ingram the feedstuffs on the terms indicated in the conversation between Ingram and plaintiff, it would pay for the same. This promise was made by an officer of the bank in good faith, and plaintiff in good faith accepted the offer and has fully performed its part of the contract. The bank paid Ingram's check for the feedstuff delivered in the month of November in accordance with the terms of the contract. The bank was interested in the improvement of the cattle. The cattle were improved by the feed furnished by plaintiff to the extent of $3000. They could not have been placed on the market except for this feed. Under the facts as plead defendant could not defeat a recovery by plaintiff on the ground that the contract was ultra vires. Cook on Corp., sec. 681, p. 1373; Gas Light Co. v. Claffry, 151 N. Y., 24.

Again, it is insisted that the cashier acted without the authority

of the bank in making the contract with plaintiff. The cashier of a bank is an executive officer through whom the whole financial operations are conducted. Where one deals with the cashier of a bank in good faith and without any notice of want of authority on his part, and the act done is within the apparent scope of his authority, the party so dealing may enforce the contract against the bank. Bank v. Martin, 70 Texas, 643; Merchants Bank v. State Bank, supra.

Where an officer of a corporation assumes to have power to bind the corporation, and enters into a contract for the corporation, and the corporation receives the fruits and benefits of the contract and retains them with knowledge of the circumstances attending the making of the contract, it is estopped from rescinding or undoing the contract. Thomp. on Corp., sec. 5258. There was no error in overruling the general demurrer to the petition.

There was no error in overruling defendant's special demurrer, in which it is alleged that the defendant bank was sought to be charged for the debt of another and therefore the contract must be in writing and signed by the bank. The contract as alleged was a contract between the bank and the Greenville Oil and Cotton Company. It was the promise of the bank made to the oil company upon which the feed was furnished. The contract did not come within the statute of frauds, and there was no error in overruling defendant's special exception. Muller v. Riviere, 59 Texas, 640; Spann v. Cochran, 63 Texas, 242; Lyons v. Daugherty, 26 S. W. Rep., 146.

The foregoing remarks dispose of the matters complained of in appellant's first, second, third, and fourth assignments of error, and they are overruled.

Appellant's fifth, sixth, seventh, and eighth assignments of error complain of the court's action in overruling the exceptions to certain evidence, and in refusing to strike out certain evidence admitted. The testimony complained of consisted of a conversation between the witness J. B. Dale and Ingram, and a conversation between Dale and Williams, cashier of the Greenville National Bank. The objection made to the testimony was that it was hearsay, immaterial, and irrelevant. The conversations complained of were but inducements leading up to the making of the contract sued upon. The testimony could not have effected the result. There is sufficient competent evidence in the record to support the judgment. The case was tried by the court without a jury. Under these circumstances the admission of the evidence is not ground for reversal of the judgment. Melton v. Cobb, 21 Texas, 543; Clayton v. McKinnon, 54 Texas, 211; Railway v. Dawson, 62 Texas, 251.

These remarks also apply to the testimony complained of in appellant's ninth and eleventh assignments of error, and they are overruled.

Appellant's thirteenth assignment of error complains that the judgment is not supported by the evidence. The evidence was sufficient to establish all the material allegations set forth in the petition, and,

it follows from what we have said, is sufficient to support the judgment. The thirteenth assignment is overruled.

We have examined the remaining assignments and are of the opinion that they are without merit, and are overruled.

The judgment rendered by the trial court was for the sum of $415, the amount paid the bank by Ingram, being the balance of the proceeds of the sale of the cattle after paying off the first mortgage thereon. The appellee contends that the judgment should have been rendered in its favor for the balance due for the feedstuffs furnished under the contract, to wit, $604.58, and asks that the judgment be reformed by this court and here rendered for said sum. We are of the opinion that the bank was liable on the contract for the value of the feedstuffs delivered under the contract made between the bank and plaintiff. The undisputed evidence shows that the balance due plaintiff upon the contract is $604.58.

The judgment will be reformed and here rendered for plaintiff (appellee) for said sum, with 6 per cent per annum interest from November 30, 1899.

*Reformed and affirmed.*