## CHEATHAM v. RIDDLE.

Where the plaintiff sues as administrator, the general denial of all the allegations in the petition, does not raise an issue whether the plaintiff is administrator, as alleged.

The jury are not required to believe a witness, although he make a plain statement of what is not impossible, and is neither impeached nor contradicted, but may discredit him on account of the manner of giving the testimony, the attendant circumstances (neither of which appear upon the record) and the unnaturalness and improbability of the statement; and this too, it seems, where the witness is the witness of the party against whom the statement militates.

Error from Titus. The defendant in error, as administrator of Elliott, sued the plaintiff in error for services rendered the defendant by the plaintiff's intestate, as his overseer. There was, in the answer, a general denial, but no special denial, or plea putting in issue the right of the plaintiff to sue as administrator. The proof was, that the deceased resided with the defendant, and served him, at times working upon his farm, and generally superintending his negroes; but he had once said to a witness who inquired what he got for the way in which he worked, that he did not work for wages, but for his victuals and clothes, and that was all he wanted; that he worked for the defendant only to please himself.

There was a verdict for the plaintiff, a motion for a new trial overruled, judgment for the plaintiff, and the defendant brought a writ of error.

The errors, assigned and relied on, were 1st, That there was no evidence of the right of the plaintiff as administrator, to maintain the action. 2nd, That the evidence did not warrant a recovery for services rendered.

*T. J. & J. H. Rogers*, for plaintiff in error. The Court below should have granted a new trial in this cause, because,

as is alleged in the motion, the verdict was contrary to the evidence.

I. Under this head, we will consider first, the second ground in the assignment of errors, that the plaintiff failed to prove that he was the administrator of Benjamin Elliott, in whose right he sues. There was no plea in abatement, that the plaintiff was not the administrator, as he alleged, nor any other plea that put that fact and the fact of the death of Benjamin Elliott, in issue, except the general denial of all the allegations in the petition, of which these were part; and under this general denial of all the allegations in the petition, it is imagined, that the right of the plaintiff to sue is put in issue. " A general traverse or denial in our system requires the " plaintiff to prove the truth of every averment material to his " cause of action." (Mims v. Mitchell, 1 Tex. R. 443-7.) The right of the plaintiff to sue, is certainly an averment material to his cause of action, and if so, it is put in issue by the general denial, and under the authority of Mims v. Mitchell, it must, in this case, be proved by the plaintiff. It is necessary that the plaintiff should " show a right to sue." (Burton v. Anderson, 1 Tex. R. 97.) And if it is necessary to aver the fact, it is of course necessary to prove it. This would not seem to require authority, but see Mims v. Mitchell. Again, The Bank v. Simonton, 2 Tex. R. which was a suit brought by a foreign corporation in their corporate names, and in which they did not set out that they were a corporate body, the Court decided that " the petition is insufficient in law in " not setting forth and showing by appropriate averments that " the plaintiffs were a corporation duly constituted by lawful " authority," &c., and this was under a general demurrer. (p. 531-40-1.) And in Crosby v. Houston, 1 Tex. R. the right of a plaintiff to sue as trustee was allowed to be objected to on error, though the objection was not made below. (p. 220.) Then why should the right of a plaintiff to sue as an administrator form an exception to the general rule, that the plaintiff must aver and prove his right to sue ? If a person

claims as heir of another, must he not aver and prove that he is such heir ? Then why, when he claims as the administrator of another, must he not aver and prove that he is the administrator ? There is no difference in principle in the two cases ?

But it will be admitted, (it is imagined,) that he must aver that he is the administrator to entitle him to recover. Then must he not prove it, for there is no sounder rule in pleading than this, that it is not necessary to aver what it is not necessary to prove.

But it is thought by some that the issue on the plaintiff's right to sue as an administrator, must be made by a plea in abatement. We do not see why this is so, more than in the cases before cited, and the authorities cited militate against the proposition. The plea that a person is not an administrator, is not a plea of disability to the person like infancy, coverture or alien enemy, but a plea in bar of the plaintiff's right to sue under any circumstances and at any time, which is a plea in bar. (See 6 Ala. R. 509; 1 Pike R. 349; 5 Blackf. 470; 1 Saund. 274, n. 3; 3 McCord; 2 Brevard; 7 Ala. R. 814.)

So, also, this plea was put in without affidavit (which is necessary in case of a plea in abatement) in the case of Lovering, Ad'mr v. McKinney et al., 7 Tex. R. 521, and it was held by the Supreme Court to be well pleaded. The same was held in the case of Boyle v. Forbes, Adm'r, 9 Tex. R. 35. It is then not a plea in abatement but a plea in bar; and hence, under our system, it can be set up under the general denial, since this puts in issue every averment in the petition material to the cause of action.

As therefore there was no proof of the plaintiff's right to sue, a new trial should have been granted and the judgment ought to be reversed.

II. The verdict was also contrary to the evidence in this, that it was proved by one of the plaintiffs' own witnesses, Livingston S. Kenner, that on one occasion, he and Elliott,

(the plaintiff's intestate,) were off on a camp hunt, and being surprised at the way Elliott managed along, he asked him what he was getting for the way he worked, and that Elliott replied that he had lived with Cheatham (the defendant) twelve or fourteen years, and that he did not work for wages, but only worked for enough to live on ; and that he was not to get anything for his work except what he lived on and wore, and that was all he wanted, and that he worked for Cheatham only to please himself. Now this testimony is uncontradicted by anything in the record, and yet the jury rendered a verdict of $300 00 for the services of Elliott. The verdict is therefore altogether contrary to the evidence, and the judgment should be reversed.

*W. H. Johnson*, for defendant in error.

WHEELER, J. The first objection urged to the judgment, raises the question whether it be necessary for the plaintiff, suing in his representative character, to adduce evidence of his right to sue in that character, when it is not put in issue by a special traverse or denial, or by a special plea. By the English Law, where the plaintiff sued as executor or administrator, for any cause of action accruing in the lifetime of his testator or intestate, and made profert of his letters testamentary or of administration, if the defendant would controvert his representative character, by reason of any extrinsic matter, he must put it in issue by a plea in abatement, or, as it seems, by a plea in bar, and could not controvert it under the general issue, that being a conclusive admission of the character in which he sued. And as to those causes of action accruing subsequent to the decease of the testator or intestate, upon which he might sue either in his private or representative character at his election, as where the action was upon a personal contract made with himself respecting the property of the deceased, or was for a violation of his actual possession of the assets, as it was not necessary for the plain-

tiff to make profert of his letters of administration, he could not be put upon proof of his representative character. But, in other cases, where the cause of action accrued in his own time, upon which he must sue in his representative capacity, it was necessary for the plaintiff to prove his representative character, under the general issue, which raised the question of title. Where, however, the cause of action accrued in the lifetime of the testator or intestate, the defendant could not, at the trial, deny the title of the plaintiff as executor or administrator, unless by a plea of *ne unques executor* or *ne unques administrator*. For if the plaintiff alleged generally that he was administrator, and the defendant did not put him upon proof of it by craving oyer of the letters of administration, but pleaded over, he thereby admitted the title of the plaintiff as administrator as alleged in the declaration; and was not allowed afterwards to controvert it. (1 Chit. Pl. 489; Williams on Executors, 1340, 1341; 2 Greenl. Ev. Sec. 338.)

But these useless distinctions have been abolished in England by the recent rules, (Reg. Gen. (Pleading) H. T. 4 W. IV.,) and now, in all actions by or against executors or administrators, the character in which the plaintiff sues or the defendant is sued, cannot in any case be considered as in issue, unless specially denied. (Williams on Executors, 1342, 2nd Am. from 2nd London Edit.) And it has been held in this country, that unless the plaintiff's right to sue as executor or administrator is put in issue by the defendant's plea, it will be deemed to have been admitted. (Notes to 1 Chit. Pl. 489.)

This rule is convenient in practice; and, it is conceived, is in consonance with principle, especially under our system of pleading, which requires such speciality in pleading as will apprise the adverse party of the matters of fact intended to be relied on in evidence. And the practice is believed to have been, not to require the plaintiff to prove his representative character, unless it was specially put in issue. The general denial has been understood as putting the plaintiff on proof of the facts which constitute the cause of action, but

not the character in which he sued.  And no reason is perceived for requiring the plaintiff to prove his representative character, unless it is controverted by the pleading of his adversary.  In the great majority of cases, an opposite practice would devolve on the plaintiff an unnecessary burden of proof; for it will seldom happen in practice, that the defendant will controvert the plaintiff's representative character, for the purpose of attaining the substantial right and justice of the case, or for any other purpose than to hinder and delay him in the prosecution of his rights.  In every case where he desires to do so, it will be more just to the plaintiff, and more in accordance with the principles of our law procedure, to require him by pleading to give notice to the plaintiff of his intention, so as to apprize him of the necessity of coming prepared with the evidence to establish his right.  It is but justice to the plaintiff that he should have notice of the defences, and surely it can operate no hardship upon the defendant.  The present question has never been directly decided by this Court.  But in an early case, (Aulanier v. The Governor, 1 Tex. R. 666,) the principle was determined, when it was said that "when a good cause of action is shown and the exception is only to the person of the plaintiff, it can only be sustained by a plea showing who is the person really entitled to be plaintiff."

We conclude, therefore, that to entitle the plaintiff to recover in his representative character, there being nothing in the pleading of the defendant putting it specially in issue, it was not necessary for the former to adduce evidence of his right to sue in that character.

In the present case, the cause of action having accrued in the lifetime of the intestate, by no rule was it necessary, as it has been in some cases where the cause of action arose in the time of his legal representative, for the plaintiff to prove his representative character.  But we do not think it material whether the cause of action accrued in the lifetime of the intestate or subsequently, and do not rest our opinion on that distinction.

It is further insisted that, by the admission of the deceased, he was not to receive wages for his services, and consequently that the jury found contrary to the evidence.

It was for the jury to determine what weight was to be given to the statement of the witness. They were best qualified to judge, from the manner of giving the testimony and the attendant circumstances, whether the conversation detailed was in earnest or in jest; and whether the statement was not too unnatural and improbable to be entitled to credence. They were the judges of its credibility; and we see no reason to be dissatisfied with the verdict. The judgment is therefore affirmed.

Judgment affirmed.