PD-0888-15

PD-0888-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/21/2015 3:06:08 PM
Accepted 7/22/2015 4:42:57 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

**LEONARD CHARLES HICKS**
Appellant

**VS.**

**THE STATE OF TEXAS**
Appellee

Original conviction in the
262ND   Judicial District Court
Harris County, Texas
Cause No. 1373854

Appealed From the Court of Appeals
No. 14-14-00263-CR

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### ORAL ARGUMENT REQUESTED

MICHAEL P. FOSHER,
Attorney at Law
The Lyric Center
440 Louisiana Ste. 1200
Houston, Texas 77002-1636
(713) 221-1810
T.B.N.: 07280300
ATTORNEY FOR APPELLANT

FILED IN
COURT OF CRIMINAL APPEALS

July 22, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), (Vernon Pamph. 2014), the following persons are interested parties:

Presiding Judge At Trial
The Honorable Judge Denise Bradley
262nd Judicial District Court
1201 Franklin
Houston, Tx 77002

Attorneys for State

Erin Epley
Assistant D.A.
1201 Franklin
Houston Tx 77002

Attorney for Defense

Mr. Kenneth McCoy
Attorney at Law
P O box 53347
Houston, Tx 77052
(281) 686-4389

Mr. Michael P. Fosher (on appeal)
Attorney at Law
The Lyric Center, 400 Louisiana, STE. 1200
Houston, Tx 77002-1636
(713) 221-1810

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . . . . . . . . . i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . ii

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . . . . iii

**PETITION FOR DISCRETIONARY REVIEW** . . . . . . . . . . . 1

**STATEMENT OF THE NATURE OF THE CASE** . . . . . . . . . . . . . 1

**STATEMENT OF PROCEDURAL HISTORY** . . . . . . . . . . . . 1

**STATEMENT REGARDING ORAL ARGUMENTS** . . . . . . . . . 1

**APPELLANT'S GROUNDS FOR REVIEW** . . . . . . . . . . 1

**APPELLANT'S FIRST GROUND FOR REVIEW**

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE STATE'S WITNESS INTERJECTED THE PRIOR SEXUAL CONDUCT OF THE COMPLAINANT? . . . . . . . . . . . 1

**APPELLANT'S SECOND GROUND FOR REVIEW**

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN ALLOWING JANET MARIE GREEN TO TESTIFY OVER OBJECTION BY GIVING AN EXPERT OPINION WITHOUT HAVING BEEN QUALIFIED AS AN EXPERT WITNESS? . . 2

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . 6

# INDEX OF AUTHORITIES
## STATE CASES

*Pinson v. State,*
   778 S.W. 2d 91 (Crim. App. 1989). . . . . . . . . . . . . . . 4

*Draheim v. State,*
   916 S.W.2d 593 (Tex. App. - San Antonio 1996). . . . . . . . . . . .4

*Miles v. State,*
   61 S.W.3d 682 (Tex. App. - Houston [1ˢᵗ Dis.] 2001). . . . . . . . . 4

*Vela v. State,*
   *209 S.W.3d 128 (Tex. Crim. App. 2006).* . . . . . . . . . . . . .5

*Holloway v. State,*
   613 S.W. 2d 497 (Tex. Crim. App. 1981 . . . . . . . . . . . . . 5

*Rodgers v. State,*
   205 S.W. 3d 525 (Tex. Crim. App. 2006). . . . . . . . . . . . .5

*Mozon v. State,*
   991 S.W.2d 841 (Tex. Crim. App. 1999). . . . . . . . . . . . 6

## STATE STATUTES

Tex. R. App. P. 38.1(a)(Vernon Pamph. 2014). . . . . . . . . . . . . i

Rule 68 of the Texas Rules of Appellate Procedure . . . . . . . . . . .1

Tex. R. App. P. 68.1(a)(Vernon Pamph. 2015). . . . . . . . . . . . .1

Tex. R. App. P. Ann. 66.3(a), (c) & (f) (Vernon Pamph. 2015). . . . . . .2

Tex. Rules of Criminal Evidence 412 (b). . . . . . . . . . . . . .3

Tex. Rules of Evidence 702 . . . . . . . . . . . . . . . . . .5

Tex. App. P. 43.2, sec. 3 Vernon's Pamph. 2014 . . . . . . . . . . .6

Tex. R. App. P. 43.2(a) Vernon Pamph. 2014 . . . . . . . . . . . .6

Tex. R. App. P. 69.1 (Vernon Pamph. 2015). . . . . . . . . . . . 6

Texas Rule of Appellate Procedure 9.4 (i) (3). . . . . . . . . . . .7

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

Comes now, LEONARD CHARLES HICKS, the Appellant, who files his petitioner for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure requesting the Court to review and thereafter reverse the opinion issued by the Fourteenth Court of Appeals in Cause Number 14-14-00263-CR , Leonard Charles Hicks v. State, and would show as follows:

## STATEMENT OF THE NATURE OF THE CASE

This appeal lies from Appellant's conviction in The State of Texas vs LEONARD CHARLES HICKS, Cause No. 1373854 for Aggravated Sexual Assault of a Child, in the 262nd Judicial District Court, Harris County, Texas. On February 28, 2014, the Appellant pled not guilty to the charge. A jury trial was held, the Appellant was found guilty of Aggravated Sexual Assault of a Child and sentenced to 65 years in the Texas Department of Criminal Justice by the Jury.

Appellant gave written notice of appeal on March 5, 2014, and Counsel was appointed on appeal. A Motion for New Trial was filed and overruled by operation of law.

This Court has jurisdiction pursuant to Tex. R. App. P. 68.1(a)(Vernon Pamph. 2015).

## STATE OF PROCEDURAL HISTORY

The Court of Appeals affirmed appellant's conviction on June 30, 2015.

## STATEMENT REGARDING ORAL ARGUMENTS

Appellant requests oral argument.

## APPELLANT'S GROUNDS FOR REVIEW

## APPELLANT'S FIRST GROUND FOR REVIEW

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE STATE'S WITNESS INTERJECTED THE

1

PRIOR SEXUAL CONDUCT OF THE COMPLAINANT.

## APPELLANT'S SECOND GROUND FOR REVIEW

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN ALLOWING JANET MARIE GREEN TO TESTIFY OVER OBJECTION BY GIVING AN EXPERT OPINION WITHOUT HAVING BEEN QUALIFIED AS AN EXPERT WITNESS.

### Reasons For Granting This Petition

This Court should grant this petition on the grounds that: 1) the Justices of the Court of Appeals have disagreed on a material question of law; 2) the Court of Appeals has decided an important question of state or federal law in a way that conflicts with applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States and 3) the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision. Tex. R. App. P. Ann. 66.3(a), (c) & (f) (Vernon Pamph. 2015).

## APPELLANT'S FIRST GROUND FOR REVIEW (RE-STATED)

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE STATE'S WITNESS INTERJECTED THE PRIOR SEXUAL CONDUCT OF THE COMPLAINANT.

At one point during the trial Jeannette Leedy was asked if complainant's regression was tied to anything specific and she answered "the last time I remember was when she saw her little brother, she was very happy to see the little boy, but after she went home and she lived with another sibling immediately they became so sexually between the two of them that it was almost impossible to dismount them one from the other." (R.R. IV-56).

Appellant's objection to hearsay was ultimately sustained and the jury was instructed to disregard the statement and a motion for mistrial was denied. The Judge then instructed the prosecutor

to inquire as to opinions only and not as to stories or credible accounts of what Ms. Reedy had heard (R.R. IV-57). Appellant's request to take the witness on voir dire was not granted.

Even though the basis of the appellant's objection as to hearsay was sustained the unsolicited prejudice of this statement could not be ignored by the jury. It could only inflame them against appellant and an instruction to disregard would not have cured the harm. In cases where the defense attempts to introduce evidence of the victim's prior sexual conduct, the defense must go through a number of steps before such evidence would be presented to a jury Tex. Rules of Criminal Evidence 412 (b). In this instance case the testimony of the prior sexual conduct of the complainant was introduced by the State for the only conceivable purpose of inflaming the jury asking them to deduce that her sexual conduct with other siblings was due to her sexual conduct with appellant. This unfair statement was not relevant to any contested issue in the case other than to produce unfair prejudice against appellant and it could only be construed to inflame the minds of the jury and appellant's request for a mistrial should have been granted. *Pinson v. State* 778 S.W. 2d 91 (Crim. App. 1989). *Draheim v. State* 916 S.W.2d 593 (Tex. App. - San Antonio 1996). *Miles v. State* 61 S.W.3d 682 (Tex. App. - Houston [1st Dis.] 2001).

Nevertheless, the Court of Appeals affirmed Appellant's conviction on this ground. Opinion at Page 10.

## APPELLANT'S SECOND GROUND FOR REVIEW (RE-STATED)

DID THE COURT OF APPEALS ERR IN NOT FINDING THAT THE TRIAL COURT ERRED IN ALLOWING JANET MARIE GREEN TO TESTIFY OVER OBJECTION BY GIVING AN EXPERT OPINION WITHOUT HAVING BEEN QUALIFIED AS AN EXPERT WITNESS.

At one point Janet Green testified was as follows:

Question:     Do you think Complainant is a generally a disturbed little girl or there is just something inherently wrong with her?

3

| | |
|---|---|
| Answer: | No, I don't. |
| Mr. McCoy: | Judge, I am going to object to that. She's not been qualified to make a medical diagnosis. |
| The Court: | OK. You can make a legal objection if you'd like. |
| Mr. McCoy: | Judge, I am going to object to that. This witness has not been qualified as an expert. |
| The Court: | I'll allow her to answer that question in the form of her opinion. |
| Question (by Ms. Epley): | In your opinion is there something just inherently wrong with Complainant? |
| Answer: | No. (R.R. III-49,50) |

As to Ms. Green's testimony that there was nothing inherently wrong with Complainant, appellant's objection notified the Court that this witness was not qualified to give an expert opinion on an ultimate issue in the case. The fact that a witness might possess knowledge or skill not possessed by other people generally does not in itself mean such expertise would assist the trier of fact regarding an issue before the Court. *Vela v. State, 209 S.W.3d 128 (Tex. Crim. App. 2006).* At this juncture of the trial the Court was required to determine the qualifications of Ms. Green as an expert witness. Tex. Rules of Evidence 702. Accordingly it must be shown that the witness possesses special knowledge on the specific matter about which his or her experience is being sought. Also the expert must demonstrate that he or she possesses knowledge that assists the trier of fact in understanding the evidence or determining a fact in issue. *Holloway v. State.* 613 S.W. 2d 497 (Tex. Crim. App. 1981).

*Rodgers v. State*, 205 S.W. 3d 525 (Tex. Crim. App. 2006) states that there are three criteria in determining whether a trial court abused its discretion in evaluating the witnesses' qualifications as an expert.

1. Is the field of expertise complex?

2. How conclusive is the expert's opinion?

3. How central is the area of expertise to the resolution of the lawsuit?

4

In this instance case, none of these criteria were investigated. The court in allowing this witness to make a conclusive finding as to an ultimate issue in the case, created unfair prejudice to appellant since the jury would have given much weight to the to witness' statement that there was nothing wrong with the complainant. The trial court abused its discretion in not looking into the qualifications of Ms. Green before allowing her to give an expert opinion. The Court of Appeals erred in not finding that the probative value of this testimony did not outweigh the damages of unfair prejudice. Her testimony should have been stricken from the record. *Miles, supra, Mozon v. State*, 991 S.W.2d 841 (Tex. Crim. App. 1999).

Nevertheless, the Court of Appeals affirmed Appellant's conviction on this ground. Opinion at Page 12.

This court should reverse appellant's conviction and order a new trial Tex. App. P. 43.2, sec. 3 Vernon's Pamph. 2014; Tex. R. App. P. 43.2(a) Vernon Pamph. 2014.

This Court should grant appellant's petition for discretionary review on these grounds and order a full brief on the merits. Tex. R. App. P. 69.1 (Vernon Pamph. 2015).

### PRAY FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Honorable Court to consider the grounds for review raised herein, to grant this petition for discretionary review, and to order a full and complete hearing on the merits and with briefs.

Respectfully submitted,

_____
MICHAEL P. FOSHER
ATTORNEY AT LAW
The Lyric Center

5

440 Louisiana, Suite 1200
Houston, Texas 77002
713-221-1810
TBN 07280300
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Texas Rule of Appellate Procedure 9.4 (i) (3), the foregoing Appeal contains 2,023 words.

_____
MICHAEL P. FOSHER

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing motion was served upon Alan Curry, curry_alan@dao.hctx.net, District Attorney of Harris County, Appellant Division, 1201 Franklin, Houston, Texas 77002, facsimile no. 713-755-5809 at the time of filing as per local rule.

_____
MICHAEL P. FOSHER

Affirmed and Memorandum Opinion filed June 30, 2015.



In The

# 𝔉ourteenth 𝔠ourt of 𝔄ppeals

---

## NO. 14-14-00263-CR

---

## LEONARD CHARLES HICKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1373854**

---

## MEMORANDUM OPINION

Appellant, Leonard Charles Hicks, appeals his conviction for aggravated sexual assault of a child. In three issues, he contends (1) the evidence is insufficient to support the conviction, (2) the trial court erred by denying appellant's motion for a mistrial after a witness interjected improper testimony, and (3) the trial court erred by allowing a lay witness to provide an expert opinion. We affirm.

# I. Background

The female complainant, who was five-years-old at the time of trial, is appellant's daughter. In January 2012, when complainant was three-years-old, she began living with two adults, Janet Green and Pamela Richardson. These women did not know complainant or her family but learned of her situation from a mutual acquaintance. They agreed to temporarily care for complainant because she and her siblings were being removed from their parents' home and all the siblings had been placed elsewhere. Complainant's placement in the home was subsequently extended through actions of relevant agencies. In the fall of 2012, her younger sister was also placed there. At the time of trial (over two years after complainant first arrived), both children were still living in the home.

According to the women's collective testimony, when complainant arrived, she was very intelligent and talkative but displayed inappropriate behavior and made statements that caused them concern. For instance, complainant would put on "a little tutu skirt" and high-heel shoes and dance like "somebody in a strip club." She "play[ed] with herself" a lot in a manner that was more than just a curious three-year-old touching her genitals. She "masturbat[ed]" using toys that were hard objects and placed stuffed toys between her legs. Once, while bathing, she aggressively moved a tubular-shaped toy back and forth between her legs, toward her genitals. When asked how she learned that behavior, she replied, "my daddy." Additionally, she was afraid of men, the police, going to jail, and being shot with a gun. She "always" talked about the "terrible things" that happened at home and said she would rather kill herself than be killed by her parents.

Richardson, who was designated as the outcry witness, more specifically testified that complainant said (1) her father would "stick" his finger in her "to-to," the term she used to described her vaginal area, which caused bleeding because his

2

fingernails were long, (2) her father would snatch her off the toilet while he was naked, put her on his lap, and "go up and down" with her, and (3) when her parents found complainant while playing hide-and-seek, they would "play in my to-to" and make her brother (who was two years older) "dig" in her "to-to."

Shortly after complainant's arrival in the home, Green contacted Children's Protective Services ("CPS"), which referred the child to the Children's Assessment Center ("the Center"). A forensic interviewer at the Center interviewed complainant in March 2012, but she did not reveal any abuse, and no charges resulted, at that time.

Meanwhile, Green also took complainant to a pediatrician. That doctor did not testify at trial, but her records were admitted. According to those records, Green reported complainant was afraid of men, she was caught enacting a sexual act with a doll, she disclosed that her mother made complainant's brother "play with her 'tutie' (her word for vagina)," and the child repeated the same information to the doctor. The pediatrician recommended that complainant continue with the CPS assessment, which was ongoing at that time.

After the CPS investigation was closed, complainant's behavior continued at home, and the women placed her in therapy. The therapist testified that, at the outset of their sessions, complainant would cower near men and was depressed and anxious. The therapist did not relay any express statements made by complainant but testified that complainant eventually spoke about "the things that occurred" with her parents and consistently gave the same version. A psychiatrist treated complainant along with the therapist. Complainant was diagnosed with various unrelated conditions, such as Attention Deficit Hyperactivity Disorder, but also Post Traumatic Stress Disorder, which the therapist explained was based on complainant's life with her parents.

3

In September 2012, complainant's teacher contacted Green because of an incident at school. When another child wanted to undress some dolls, complainant "threw a fit" and insisted, "don't do that because she's going to get hurt like I did by my daddy." The teacher tried to calm complainant, but she repeated the doll would get hurt "like my dad hurt me" if her clothes were removed. This report prompted Green to again contact CPS, and the child was referred to the Center.

Complainant then met with the same forensic interviewer, who testified that this time the child made "disclosures." The interviewer was precluded at trial from revealing those statements but testified the child placed her finger in the vagina of an anatomically correct doll and twisted the finger. The interviewer also explained that often a child will not open up during a first interview but does later after feeling more comfortable due to family support or having attended therapy.

Complainant was also examined by a physician at the Center. The physician's testimony, and portions of her medical records, reflected the following exchange: Complainant told the physician, "my daddy touched my ear and in my back, my behind." The physician asked, "what did he do to your behind?" Complainant responded, "he rubbed my front. He rubbed with my front. When he was trying to play with my front with his finger, I keep watching cartoons and he kept -- and I kept hitting him away."

Additionally, those medical records reflected the following history, as provided by the referring adults: (1) complainant exhibited "sexualized behaviors"; (2) she had disclosed that appellant "put his fingers in [her] vagina"; and (3) "there had been allegations against dad since [the caregiver] first received child." The records include a comment from the physician that complainant "gives clear [history of] fondling of genitals by father."

4

This second assessment resulted in a CPS disposition of "reason to believe." The police arrested appellant for aggravated sexual assault of a child.

Complainant testified at trial that appellant twice "digged in my to-to." Further, her brother testified that shortly before the family separated, he saw appellant touch complainant's "middle part," the term the brother used to describe complainant's genitals, and appellant made the brother hit complainant in her "private area."

A jury convicted appellant of the offense. After finding two enhancement paragraphs were "true," the jury assessed punishment at sixty-five years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction. When reviewing sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child younger than age fourteen by any means. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West,

5

Westlaw through 2015 R.S.). In this case, the jury was charged that appellant committed the offense if he intentionally or knowingly penetrated complainant's sexual organ with appellant's finger.

The State presented direct evidence that appellant penetrated complainant's vagina with his finger: (1) complainant's testimony that appellant twice "digged in my to-to," which referred to her vaginal area; and (2) complainant's outcry to Richardson that appellant would "stick" his finger in her "to-to." Either testimony is alone sufficient to support the conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a) (West, Westlaw through 2015 R.S.) (providing conviction for sexual assault of a child is "supportable on the uncorroborated testimony of the victim . . . ."); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (recognizing outcry testimony alone can be legally sufficient evidence to support a conviction for sexual assault of a child); *see also Bargas v. State*, 252 S.W.3d 876, 888–89 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding child's testimony regarding abuse was alone sufficient to support defendant's conviction for aggravated sexual assault despite child's use of "unsophisticated terminology"); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding child's outcry statement was alone sufficient to support defendant's conviction for aggravated sexual assault).

Nonetheless, the following evidence, although not direct regarding the requisite penetration, supported the jury's finding, when combined with the direct evidence: (1) complainant's sexually suggestive behavior; (2) complainant's fearful demeanor, including a fear of men; (3) complainant's specific remarks to caregivers or professionals generally indicating abuse by appellant: she learned to move tubular-shaped toys back and forth toward her genitals from "my daddy"; he made her "go up and down" on his lap while he was naked; an undressed doll

6

might get "hurt" like appellant "hurt" complainant; her parents "play" in her "to-to" during hide-and-seek; and appellant rubbed and tried to play with complainant's "front" with his finger; (4) the fact that complainant generally spoke to her therapist about the "things that occurred" and was diagnosed with Post Traumatic Stress Disorder from having lived with her parents; (5) the fact that complainant generally made "disclosures" to the forensic interviewer (at their second meeting); (6) complainant's actions during that interview of placing her finger in the vagina of the doll and twisting the finger; (7) the brother observing appellant "touch" complainant's genitals; (8) appellant forcing the brother to "hit" complainant's genitals or place his finger in her "to-to"; and (9) the CPS disposition of "reason to believe."

Appellant proffers multiple reasons that the evidence is purportedly insufficient to support his conviction.

First, appellant cites several items of evidence to attack the credibility of witnesses and whether the child's statements, behavior, and testimony indicated any sexual assault occurred:

- Complainant was diagnosed with several psychological disorders unrelated to any sexual abuse, and her therapist acknowledged she had difficulty adapting to her new home.

- Complainant gave conflicting trial testimony on whether any abuse occurred: She originally testified no one had touched her "to-to." The prosecutor then requested a break and spoke with complainant. After the break, complainant testified the prosecutor did not tell her what to say but only that she should tell the truth and they would talk about her father. She then testified appellant "digged in my to-to."

- Complainant's teacher acknowledged the child was bossy and thus it was not unusual for her to insist another child refrain from removing a doll's clothes.

7

- The CPS investigator who ultimately reached a disposition of "reason to believe" did not personally interview complainant or the investigating officer but gathered her information from observing the forensic interview.

- Green originally testified complainant and her brother had seen each other only once since complainant began living in the Green/Richardson home; but, after the brother recounted two visits, Green acknowledged she had forgotten another visit.[1]

All of these points are merely matters on which we defer to the jury in its role to judge the credibility of witnesses, weigh certain factors, and choose whether to believe some or all of a witness's testimony. *See Gear*, 340 S.W.3d at 746; *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (recognizing jury may choose to believe some, while rejecting other portions, of a witness's testimony). The jury was free to resolve those issues in favor of believing the State's witnesses and determining that complainant's testimony, statements, and behavior supported a finding that appellant committed the offense. *See Gear*, 340 S.W.3d at 746; *Sharp*, 707 S.W.2d at 614.

Next, appellant relies on the fact that the physician who examined complainant at the Center did not find any physical signs of abuse. However, that fact does not render the evidence insufficient; the physician also explained that it is common for a victim of sexual abuse to have normal physical findings because injuries heal quickly and the vagina is very elastic.

Finally, appellant cites the brother's testimony that his mother's boyfriend, referred to as "Daddy Phillip," was the one who touched complainant's genitals. However, the brother later clarified that "Daddy Phillip" and appellant are the same person.

---

[1] The State proffered testimony regarding the limited number of visits to prove the children lacked an opportunity to concoct a story, and when Green remembered both visits, she was clear they occurred after complainant's outcry.

In summary, the evidence is sufficient to support appellant's conviction for aggravated sexual assault of a child. We overrule his first issue.

## III. DENIAL OF MOTION FOR MISTRIAL

In his second issue, appellant complains that the trial court denied appellant's request for a mistrial after a witness interjected improper testimony.

On direct examination, complainant's therapist testified that she becomes concerned when she detects complainant is regressing. The State asked if the regression is tied to anything specific, and the therapist responded:

> The last time I remember was when she saw her little brother, she was very happy to see the little boy, but after she went home and she lives with another sibling and immediately they became so sexually [sic] between the two of them that it was almost impossible to dismount them one from the other.

Appellant's counsel asked to take the witness on voir dire, asserting the testimony was likely hearsay because it involved activity in the home on which the therapist would lack personal knowledge. Without requiring voir dire, the trial court's sustained the hearsay objection and instructed the jury to disregard the response. The trial court then denied appellant's request for a mistrial.

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Mistrial is appropriate only for "highly prejudicial" and "incurable" errors. *Id.* "It may be used to end trial proceedings when faced with error so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* Ordinarily, a prompt instruction to disregard will cure error associated with improper testimony. *See id.* "Generally, a mistrial is only required when the improper evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression

9

produced on the minds of the jury." *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Whether the erroneous admission of evidence requires a mistrial is determined by considering the facts and circumstances of the case. *Id.*

Appellant contends the testimony at issue was introduced by the State solely to inflame the jury and it unfairly prejudiced appellant. The record negates appellant's contention regarding the State's purpose because the State represented it did not expect the witness's response and seemed to acknowledge it had yet to establish admissibility of any such testimony. Further, the question regarding what type of events caused complainant to regress did not indicate the State intended for the witness to describe such a detailed incident that was not necessarily based on her personal knowledge.

With respect to the unfair-prejudice contention, appellant asserts the testimony suggested complainant and her sister behave in a sexual manner toward each other because they learned this behavior from appellant's sexual conduct toward complainant. We disagree that the testimony at issue was "so prejudicial that expenditure of further time and expense would be wasteful and futile," *see Simpson*, 119 S.W.3d at 272, because the jury had already heard ample other evidence regarding sexual behavior exhibited by complainant. Moreover, Green had testified that when the sister arrived in the home, she displayed similar behavior.

Accordingly, the trial court did not abuse its discretion by denying appellant's motion for a mistrial. We overrule his second issue.

## IV. ADMISSION OF TESTIMONY

In his third issue, appellant argues that the trial court erred by allowing a fact witness to provide an expert opinion. Appellant cites the following exchange when

10

the State examined Green:

> Q. Do you think that [complainant] is a generally disturbed little girl or there's just something inherently wrong with her?
>
> A. No, I don't.
>
> [APPELLANT'S COUNSEL]: Judge, I'm going to object to that. She's not been qualified to make a medical diagnosis.
>
> THE COURT: Okay. You can make a legal objection if you'd like.
>
> [APPELLANT'S COUNSEL]: Judge, I'm going to object to that. This witness has not been qualified as an expert.
>
> THE COURT: I'll allow her to answer that question in the form of her opinion.
>
> Q. [THE STATE] In your opinion, is there something just inherently wrong with [complainant]?
>
> A. No.

Appellant contends the testimony constituted an expert medical opinion, which Green was not qualified to provide.

A lay witness may testify in the form of an opinion if it is (a) rationally based on the witness's perception, and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue. Tex. R. Evid. 701. The witness must have personally observed or experienced the events about which she testifies. *See Osbourn v. State,* 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from her own experiences or observations. *Id.; see also Clark v. State,* 305 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2010), *aff'd,* 365 S.W.3d 333 (Tex. Crim. App. 2012) (citing *Wilson v. State,* 605 S.W.2d 284, 286–87 (Tex. Crim. App. 1980)). We review the trial court's decision to admit evidence for abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex.

11

Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.*

We conclude the trial court did not abuse its discretion by determining Green did not provide an expert medical opinion and was permitted to give her opinion as a lay witness. Green did not refer to any specific medical conditions and instead described complainant's general disposition. The trial court acted within its discretion by concluding that Green, having cared for complainant in Green's home for more than two years, could adequately give a lay opinion about whether complainant was "generally disturbed" or had "something inherently wrong" with her. Moreover, although appellant does not dispute whether subpart (b) of Rule 701 was satisfied, the testimony was helpful to determining a fact at issue—whether, as suggested by appellant, complainant contrived a story about sexual abuse because she has psychological disorders. *See* Tex. R. Evid. 701(b). Because the trial court did not err by admitting the testimony, we overrule appellant's third issue.

We affirm the trial court's judgment.

/s/    John Donovan
        Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

12